IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| STAR INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:05-CV-197-WKW |
| ) | |
| A-1 METALS, INC., *et al.,* ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

This cause is before the court on three motions for summary judgment (Docs. # 47, 49 and 52), filed on October 7, 2005, October 12, 2005, and October 14, 2005. For reasons to be discussed, the Court finds that the motions filed by defendants Conrad and June Ward and Steve Cochran are due to be GRANTED, and the motion filed by plaintiff Star Insurance Company is due to be DENIED.

**I. FACTS AND PROCEDURAL HISTORY**

The facts contained in the parties' evidentiary submissions, viewed in a light most favorable to the non-movant, show the following:

Conrad and June Ward ("Ward")[1] contracted with A-1 Metals in January 2003 for construction of a metal roof on their house and barn. Steve Cochran ("Cochran"), a sales representative for A-1 Metals, facilitated the contract. According to Ward, at the time she entered into an agreement with A-1 Metals, Cochran represented that all A-1 Metals employees who installed the roofing system would be factory trained. From March to June of 2003, Ward

---

[1] Conrad Ward is now deceased, and June Ward, as executrix of his estate, has been substituted as a party for Conrad Ward. For the sake of simplicity, the Court will refer to June Ward as a singular defendant.

experienced numerous problems with the roofing system. On August 4, 2003, Ward filed suit against A-1 Metals, Cochran and others in state court, alleging, among other things, that Cochran's representations were fraudulent and that the installation of the roofing system was performed in a negligent and wanton manner.

A-1 Metals was insured through a general commercial liability policy issued by Star Insurance ("Star") which was in effect from February 12, 2003 until February 12, 2004. A-1 Metals did not attempt to notify Star when it was served with Ward's state court complaint in August 2003. Attorney Jerry Quick, without the knowledge of Cochran, entered an appearance in the state court action on behalf of both A-1 Metals and Cochran. Cochran, however, was not properly served until October or November of 2004, and had not met attorney Quick before then. In November 2004, after Cochran informed Quick that a liability insurance policy existed, Star was notified of the pending lawsuit. The trial was scheduled to begin in January 2005. Discovery was still ongoing at the time Star learned of the lawsuit. Depositions of two of the defendants were conducted in December 2004. Star did not inform the defendants as to whether it would provide a defense, nor did Star issue a reservation of rights letter. The case was tried in Elmore County in January 2005, and a jury returned a verdict in favor of Ward and against A-1 Metals and Cochran in the amount of $350,000.[2]

Star Insurance Company filed a Complaint (Doc. # 1) with this Court on March 1, 2005, seeking a declaratory judgment regarding its obligations in the underlying state court case. Ward filed an Answer and Counterclaim (Doc. # 5) on March 28, 2005. Now pending before the Court are three motions for summary judgment (Docs. # 47, 49 and 52), filed by, respectively, Ward, Cochran and Star. On March 23, 2006, this Court entered an order (Doc. # 86) limiting Star's

---

[2] The verdict has been upheld on appeal. *See Cochran v. Ward*, 2006 WL 204989 (Ala. 2006).

defenses in response to Ward's counterclaim.

## II. JURISDICTION AND VENUE

Star is a citizen of Michigan; A-1 Metals, Cochran and Ward are citizens of Alabama. The amount in controversy exceeds $75,000. Therefore, this Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. Additionally, the Court finds that the record includes adequate allegations supporting personal jurisdiction and venue.

## III. SUMMARY JUDGMENT STANDARD

Under Rule 56 (c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that

there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the court must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c).

## IV.  DISCUSSION

*A.    Notice to Star*

Star contends that, because it did not receive notice of the Wards' suit against Cochran and A-1 Metals until November 2004, it was not obligated to pay for the resulting state-court judgment. Star points to a provision in the insurance policy excluding any claims for which the insureds did not provide timely notice to the insurance company. The exclusion reads:

> 2.    Duties In The Event Of Occurrence, Offense, Claim Or Suit
>
> a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.
> . . . .
>
> b.    If a claim is made or "suit" is brought against any insured, you must . . . see to it that we receive written notice of the claim or "suit" as soon as practicable.
> . . . .
>
> c.    You and any other involved insured must:
>
> > (1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit"; . . . .

(Doc. # 51, Ex. 3 at 22, 36.)   The  policy explains that "you" refers to a named insured, and "insured" refers to any person covered under the policy. (*Id.* at 14.)  In this case, "you" referred to A-1 Metals, and "insured" referred to both A-1 Metals and Cochran.  A-1 Metals, therefore, was required to provide Star with notice of any occurrence which may have resulted in a claim; Cochran, however, was only required to provide Star with a copy of the complaint and summons after he became aware that a suit had been initiated.

It is undisputed that, upon learning of the state court suit, Cochran provided notice to Star. Although two summonses were sent to Cochran after the state court action was filed, there is no evidence that Cochran was served with either summons. (Doc. # 47, Ex. A ¶ 4.)  Cochran testified that he was never served with a complaint and that he had "no actual knowledge" of the lawsuit until October or November of 2004.  (Doc. # 47, Ex. S.)  Although attorney Jerry Quick filed an appearance on behalf of all state court defendants, including Cochran, Cochran testified that he did not know who Quick was until October or November of 2004. (*Id.*)  The first time Quick and Cochran met, Cochran told Quick "that there was insurance for the case." (*Id.*)  Star admits that it was notified of the pending lawsuit on either November 5 or November 8, 2004. (Doc. # 47, Ex. E ¶ 5.)   Further, Quick made several attempts to contact Meadowbrook Insurance Group ("Meadowbrook"), to discuss the state court case during November and December 2004.[3] (Doc. # 47, Ex. C.)  Quick indicated to Meadowbrook's representative that A-1 Metals did not have the resources to thoroughly defend the case. (*Id.*)  Even after receiving notice of the lawsuit, Star did not notify A-1 Metals or Cochran as to whether it would provide a defense, nor did Star issue a

---

[3] The record does not describe Meadowbrook's connection to Star, but Star makes no issue of the efficacy of notice to Star through contacts with Meadowbrook.

reservation of rights letter to A-1 or Cochran. (Doc. # 47, Ex. E. ¶¶ 8, 10.) Discovery in the state court case was still ongoing at the time Cochran provided notice to Star; the depositions of Herman Cline, owner of A-1 Metals, and Cochran were not taken until December 17, 2004. (Doc. # 59, Exs. X and Y.)

Star argues that it did not receive notice of the state court suit until two months before the trial was scheduled to begin, and therefore was unable to mount a proper defense. However, the Alabama Supreme Court has held that "whether the insurer was prejudiced by the delay is immaterial to a determination of the reasonableness of the delay . . . ." *Southern Guaranty Ins. Co. v. Thomas*, 334 So. 2d 879, 883 (Ala. 1976). Upon learning that he had been named as a defendant in the Wards' suit, Cochran gave notice to Star of the claims against him. When he first learned of the suit in either October or November of 2004, Star was notified promptly. Moreover, had Star intervened at that time, it could have participated in defending the suit. Discovery was still ongoing, and Star had adequate time to ask for a continuance of the trial date. Even after Star was provided with notice of the suit, it declined to participate or reserve its rights. The Court finds that Cochran provided Star with proper notice, as required by the terms of the insurance policy, and that Star may not now rely on lack of notice as a defense to payment of the underlying judgment.

Star argues that Cochran knew of a *potential* claim well in advance of November 2004 because he knew that the Wards were dissatisfied with the work performed on their roof. According to the plain language of the insurance policy, however, Cochran—as an insured but not a named insured—was only obligated to provide notice to Star upon receiving written notice of a suit or claim against him. It is undisputed that Cochran did not know that he had been named as a defendant in the Wards' suit until October or November of 2004. Even if Cochran had heard that the Wards were

6

dissatisfied, this knowledge alone was not enough to cause Cochran to believe he was liable for potential claims.

When the facts regarding notice are not disputed, adequacy of notice of pending litigation is a question of law. *Southern Guaranty*, 334 So. 2d at 882-83.  Under the facts presented, the Court finds that Cochran's notice to Star was adequate under the terms of the policy, and that Cochran is therefore entitled to indemnity in the state court action.

B.     *Property Damage Exclusion*

Star claims that the Wards' state court claims against A-1 Metals and Cochran are not covered by the insurance policy.  Star points to an exclusion in the policy which states that Star "will not pay for loss or damage caused by . . . [f]aulty, inadequate or defective . . . workmanship, repair, [or] construction."  (Doc. # 52-1 at 9-10.)  In its brief, Star neglects to cite to a specific provision of the policy where this exclusion can be found.  Upon examining the insurance policy in its entirety, the Court finds this exclusion is stated only in the Commercial Property section of the policy.  No such exclusion is found in the policy's general liability coverage.

The Alabama Supreme Court has repeatedly held that damage caused by roofing work is covered under general liability insurance policies which use language similar to that found in the policy in this case. *See Employers Ins. Co. of Ala., Inc. v. Ala. Roofing & Siding Co., Inc.*, 124 So. 2d 261 (Ala. 1960); *United States Fidelity & Guaranty Co. v. Bonitz Insulation Co. of Ala.*, 424 So. 2d 569 (Ala. 1982); *L.J. Moss v. Champion Ins. Co.*, 442 So. 2d 26 (Ala. 1983).  The Court finds no policy language that excludes Ward's state court claims under the general liability insurance policy.

V.  CONCLUSION

For the reasons set forth above, it is hereby ORDERED that:

1. Ward's Motion for Summary Judgment (Doc. # 47) is GRANTED.

2. Cochran's Motion for Summary Judgment (Doc. # 49) is GRANTED.

3. Star's Motion for Summary Judgment (Doc. # 52) is DENIED.

A final judgment will be entered in accordance with this order.

DONE this the 12th day of July, 2006.

                                            /s/  W. Keith Watkins
                                    UNITED STATES DISTRICT JUDGE